Filed 3/11/25  In re Y.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Y.C., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E084538 |
| Plaintiff and Respondent, | (Super.Ct.No. J291050) |
| v. | OPINION |
| D.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

The juvenile court terminated defendant and appellant D.C.'s (father) parental rights as to Y.C. (minor, born September 2017). On appeal, father contends the court committed reversible error in finding that plaintiff and respondent, San Bernardino County Children and Family Services (the department), complied with their duty of inquiry with respect to the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare and Intuitions Code section 224.2, subdivision (a) (Cal-ICWA).[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Mother and minor's youngest sibling (A.F.) tested positive for amphetamines at the latter's birth in October 2021.[3] The maternal grandmother informed the social worker that she had been awarded temporary custody of minor and another sibling (H.C., collectively "minors")[4] in August 2021, because mother did not have stable housing.

H.C. reported he lived with father.[5] Father reported using illicit substances in the past, but said that he had been clean for three years. He said he had last seen his children

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] On our own motion, we incorporated the record in case No. E083388, from father's notice of intent to file a petition for extraordinary writ, with the record in this case.

[3] Mother, A.F., and A.F.'s father are not parties to the appeal.

[4] H.C. is not a party to the appeal.

[5] Father is the father of both H.C. and minor.

in February or March 2021. The department had received "numerous" previous referrals with respect to mother alleging drug use and domestic violence.

On October 22, 2021, the department placed minors into protective custody. On October 26, 2021, the department filed a section 300 juvenile dependency petition alleging that mother abused controlled substances (b-1), that mother had a history of engaging in domestic violence (b-2), that mother failed to provide minor a safe living environment (b-3), and that father left minor in the care of mother, who failed to protect her (b-4).

At the detention hearing on October 27, 2021, mother's counsel noted that, in addition to mother's presence in court, there were "two maternal relatives with her, the maternal grandmother, . . . and I believe, the maternal great aunt." Mother's counsel requested "that the maternal grandmother be checked out as a possible placement as expediently as possible."

Father had filed a Judicial Council Forms, form ICWA-020, on the same day asserting, "I have no Indian ancestry as far as I know." The court confirmed that mother had "submitted the parental notification of Indian ancestry stating you have no Indian ancestry as far as you know." The court likewise confirmed that father indicated that he had no Indian ancestry.

The court asked the maternal grandmother whether she was aware of any Indian ancestry in her family; the maternal grandmother responded that she was not aware of any such ancestry. The court detained minors.

In the November 12, 2021, jurisdiction and disposition report, the social worker recommended the court find the allegations in the petition true, remove the children, and grant parents reunification services. The social worker asserted that ICWA did not apply. Father "identified the following individual as his safety network: girlfriend, [J.P.], paternal uncle, [M.C. Jr.], [and] Sister in Law, [E.C.] . . . ."

At the hearing on November 17, 2021, the court again conducted an ICWA inquiry of the maternal grandmother, who answered, "There is none, no." The court found the allegations in the petition true and removed minors from parents.

Mother's counsel noted, "I provided the court officer with relative information for a maternal cousin who is seeking placement. There are other maternal relatives that would like to be assessed. I advised my client to urge them to—to reach out to the social worker and get that information to them as soon as possible." The court granted parents reunification services as to minors.

In the status review report filed on May 9, 2022, the social worker recommended the court grant continued reunification services to parents. The social worker made further ICWA inquiries of father, the parental uncle (C.O.), a maternal cousin (M.D.), and a paternal uncle (M.C. Jr.), all of whom denied any Native American ancestry. Father identified the following paternal relatives: a paternal uncle M.C. Jr., the paternal grandfather, M.C. Sr., and the paternal grandmother A.C. Father requested the paternal uncle M.C. Jr. and his wife E.C. be assessed for placement of minors. In the initial stages

4

of the assessment, E.C. indicated an adult in the home was on probation; therefore, the social worker could not complete an assessment of the home for placement of minors.

At the hearing on May 17, 2022, the court noted that a maternal cousin M.D. was present; the court asked M.D. if he had any Native American ancestry; M.D. responded that he did not. The court also made ICWA inquiries of the maternal grandmother; she responded that she had no Indian ancestry. The court then inquired of a maternal aunt S.M. whether she had any Native American ancestry; she responded that she did not. The court set the matter for a contested hearing.

At a hearing on June 22, 2022, the court again confirmed that the maternal aunt S.M. and the maternal cousin M.D. had no Native American ancestry. The court continued the contested review hearing.

In an additional information for the court filed July 5, 2022, the social worker reported that she had contacted a maternal aunt R.P., who denied Native American ancestry. At the hearing on July 6, 2022, the maternal grandmother appeared; the court noted that she had "previously denied Native American Indian ancestry in the Family Finding and ICWA inquiry." The court also confirmed that the maternal aunt S.M. and paternal aunt C.O., who were also present in court, had previously denied Indian heritage. The court continued the matter for the contested hearing.

At the hearing on July 18, 2022, the court again confirmed that the maternal grandmother, the maternal aunt S.M., and the paternal aunt C.O. had all previously denied Native American ancestry. The court again continued the matter.

At the hearing on August 5, 2022, the court yet again confirmed that "the maternal grandmother, maternal great-aunt [S.M.], and the paternal aunt [C.O.] were all questioned and indicated there's no Native American ancestry."[6] The court granted parents an additional six months of reunification services for minors.

In the status review report filed November 7, 2022, the social worker recommended the court terminate parents' reunification services and set the section 366.26 hearing. The social worker provided of a graph of the previous inquiries of mother, father, the maternal cousin M.T., and paternal uncle M.C. Jr. reflecting that they had all denied any Indian ancestry. The social worker noted that the court had previously found that ICWA did not apply.

The social worker further indicated, "On November 05, 2022, the undersigned left a message for [father] inquiring if he had Native American Ancestry. On November 05, 2022, the undersigned spoke to maternal great aunt, [S.C.,][7] to attempt to inquire if [mother] had Native American Ancestry. At the time of writing this report the undersigned has not received a response. During the previous review period both [father] and [mother] denied Native American Ancestry." Both parents' whereabouts were unknown at the time of the report.

---

[6] This was the first time anyone referred to S.M. as a maternal "great-aunt," rather than simply a maternal "aunt."

[7] It is unclear from the record whether this was another maternal great-aunt, or whether the social worker incorrectly wrote the maternal great-aunt's last name and that this was the same maternal great-aunt S.M. with whom the court had previously, repeatedly spoken.

On November 17, 2022, the court reaffirmed that the maternal grandmother and maternal great-aunt had previously denied Indian ancestry. The court continued the matter for a contested hearing.

At the hearing on December 8, 2022, the court, yet again, confirmed that the maternal grandmother and maternal great-aunt had previously denied Native American heritage. The court terminated parents' reunification services as to minor, set a hearing for ICWA review, and set the section 366.26 hearing.

In a January 19, 2023, additional information for the court, the social worker noted that she had "conducted further Native American Ancestry inquiry. The undersigned contacted maternal aunt [S.G.] and maternal grandmother [M.G.] to inquire about Native American Ancestry." They both denied any Indian ancestry. "On January 05, 2023[,] and January 18, 2023, the undersigned called the number on file . . . for maternal aunt [E.M.] and maternal uncle [J.M.]. The undersigned was unsuccessful in efforts to contact [them], the undersigned left a voicemail each attempt and provided a call back number."

"On January 03, 2023[,] and January 05, 2023, [t]he undersigned attempted to call the number on file . . . for paternal grandmother [A.C.] and paternal grandfather [M.C. Sr.;] the undersigned left a voicemail and provided a call back number." The social worker later spoke with the maternal uncle M.P. who denied any Indian ancestry.

At the ICWA review hearing on January 23, 2023, the department noted it had "contacted all or nearly all of the relatives. The only people that I did not see that were asked were [E.C.], and then Father's significant other, [J.P.], and Father's significant

7

other's mother, [G.P.]. [¶] I'm not sure if the Court would like us to inquire of the significant others or not. But I do think that [E.C.] is a relative and we'll need to make efforts to contact her." The court asked, "the social worker to reach out to the father's significant other to see if she has any different information than the father." The court set the matter for further ICWA review.

On February 16, 2023, the department filed an additional information for the court in which the social worker indicated she "attempted to contact, the father['s] . . . past significant other, . . . to make further inquiry regarding Native American Ancestry. The undersigned was unsuccessful in contact[ing] [her;] the undersigned left a voicemail." The department "has no other number on file for [the former girlfriend.]" "On February 13, 2023, the undersigned called [father] and sent a text message asking for relative [E.C.'s] contact information[;] at the time of writing this update the undersigned has not received contact information for relative [E.C.]."

At the further ICWA inquiry hearing on February 23, 2023, the court noted, "The social worker was unsuccessful in contacting [the former girlfriend]. The social worker left . . . a voicemail on February 8th and February 13th, and there's been no response. The social worker also called [father] asking for [E.C.'s] contact information and [there] has been no response, either, from [father]." The court found that the department had complied with its ICWA duty of inquiry and that ICWA did not apply.

In the section 366.26 report filed April 4, 2023, the social worker requested an additional 90 days to assess the prospective adoptive parents. The social worker provided

8

an updated graph of the previous inquiries of mother, father, the maternal cousin M.T., paternal uncle M.C. Jr., and paternal aunt C.O., reflecting that they had all denied any Indian ancestry. The social worker noted that the court had previously found that ICWA did not apply.

At the hearing on April 7, 2023, the court continued the section 366.26 hearing. In a June 23, 2023, additional information for the court, the social worker requested to change the recommendation for minors' permanent plan from adoption to "a lesser plan" "due to the extensive services needed to address" H.C.'s behaviors.

At the hearing on July 6, 2023, the court set the matter for a contested hearing on the department's recommendation to terminate parents' visits as detrimental to minors' best interest and change minors' permanent plan. On July 28, 2023, the court again continued the matter.

On August 30, 2023, the parties agreed to continued visitation between parents and minors. The court ordered continued visitation.

The court noted, "We still need to address the issue of the recommendation that changed for the previous [366].26 hearing. The recommendation is now for the Court to set a post-permanent review hearing." The court found the previously recommended plan of adoption no longer appropriate. The court adopted the department's recommendation that the permanent plan be changed to placement in foster care.

In the February 21, 2024, status review report, the social worker changed the recommendation solely as to minor; the social worker now, again, recommended the

9

court set a section 366.26 hearing as to minor with adoption as the permanent plan. At the hearing on March 1, 2024, the court set the section 366.26 hearing as to minor.

Father filed a notice of intent to file a petition for extraordinary writ. On April 3, 2024, this court dismissed the case pursuant to father's counsel's letter reflecting that there were no legal or factual issues upon which to base a petition for extraordinary writ.

In the June 26, 2024, section 366.26 report, the social worker recommended parents' parental rights to minor be terminated. The social worker noted that the department "has had limited contact with the parents during this review period and ha[s] not had the opportunity to make further ICWA inquiry. Previously, the parents denied Native American Ancestry."

At the section 366.26 hearing on July 1, 2024, the court noted that it had "previously found that the Indian Child Welfare Act did not apply." The court found minor adoptable and terminated parents' parental rights to minor.

## II. DISCUSSION

Father contends the juvenile court failed to ensure the department complied with ICWA and Cal-ICWA. Specifically, father maintains that the department failed to make sufficient inquiries of the paternal grandfather M.C. Sr., the paternal grandmother A.C., and the paternal uncle M.C. Jr.'s wife, E.C. We disagree.

"In 1978, Congress enacted the [ICWA] to 'formalize[] federal policy relating to the placement of Indian children outside the family home.' [Citation.] Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; [citation]), courts

10

and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases. [Citation.] Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' [Citation.]" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124-1125 (*Dezi C.*), fn. omitted; accord *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1099.)

"Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. [Citation.]" (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-1332.) "[T]he duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' [Citation.] '[E]xtended family member' means 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' [Citations.]" (*Id.* at p. 1132, fn. omitted; see *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1099, fn. 5.)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' [Citation.]" (*Dezi C.*, *supra*, 16 Cal.5th at

11

p. 1134; accord *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1101.)  "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review.  [Citations.]  '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.  However, the less developed the record, the more limited that discretion necessarily becomes."'  [Citations.]"  (*Dezi C.*, at p. 1141; accord *In re Kenneth D.*, at pp. 1101-1102.)

Reversal is not required where "every possible extended family member has not been asked about the child's Indian ancestry."  The department is not required "'to 'find' unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'  The operative concept is those people who are reasonably available to help the agency with its investigation.'"  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140; accord *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1094.)

Here, both the department and the court conducted extensive inquiries of extended family members, all of whom repeatedly denied having any Native American ancestry. Substantial evidence supported the court's determination that ICWA did not apply.

The court ensured that both parents had filed ICWA forms; in both forms, parents denied Indican ancestry.  Both parents denied any Native American ancestry when asked directly by the court.  The social worker made repeated further ICWA inquiries of

12

parents, in response to which parents either denied Indian ancestry or failed to respond altogether.

The social worker made ICWA inquiries of a paternal uncle C.O., a maternal cousin M.D., another paternal uncle M.C. Jr., a maternal aunt R.P., another maternal aunt S.G., a maternal uncle M.P., and the maternal grandmother, all of whom denied Native American ancestry. The social worker made unsuccessful attempts to contact yet another maternal aunt E.M., another maternal uncle J.M., and father's "past significant other," all of whom failed to respond to voicemails. The social worker provided the court with graphs reflecting all the ICWA inquiries it had conducted.

The maternal grandmother repeatedly denied any Indian ancestry when asked by the court. The court twice inquired of the maternal great-aunt S.M. whether she had any Native American ancestry; she responded both times that she did not. The court twice inquired whether the maternal cousin M.D. had any Native American ancestry; M.D. twice responded that he did not. While they were present in court, the court repeatedly confirmed that the maternal grandmother, the maternal great-aunt S.M., and the paternal aunt C.O. had previously denied Indian heritage.

Most pertinent here, "On January 03, 2023[,] and January 05, 2023, [t]he [social worker] attempted to call the number on file . . . for paternal grandmother [A.C.] and paternal grandfather [M.C. Sr.;] the undersigned left a voicemail and provided a call back number."

13

At the time of her inquiry, the social worker had no current contact information for E.C., the wife of paternal uncle M.C. Jr. She called and texted father to obtain contact information for E.C., but father failed to respond. Thus, with no reason to know or believe that minor was an Indian child, the court found that ICWA did not apply.

We see nothing in the law to require the department to make repeated or exhaustive attempts to inquire of extended family members who have not participated in the proceedings. This is particularly true where, as here, none of the relatives of whom father complains the department failed to sufficiently inquire were "reasonably available." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140; see *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1094.) Moreover, there is no reason here to know, let alone reason to believe, that minor was an Indian child because repeated inquiries of numerous extended family members all reflected no Indian ancestry.

On this record, the social worker's two calls to the paternal grandmother and paternal grandfather were "proper, adequate, and duly diligent." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141; accord *In re Kenneth D.*, *supra*, 16 Cal.5th at pp. 1101-1102.) Likewise, the social worker's unreturned inquiries of father for contact information for E.C. were sufficient to satisfy the department's duty of inquiry. The social worker had previously inquired of M.C. Jr., E.C.'s husband, who was the actual blood relative of minor; M.C. Jr. denied any Indian ancestry. The court acted within its "relatively broad discretion" in determining that ICWA did not apply.

## III.  DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
Acting P. J.

We concur:

MILLER _____
J.

RAPHAEL _____
J.